TEÓFILO MARXUACH PLUMEY, demandante y apelado, *v.* CAROLINA ACOSTA Y ACOSTA, demandada y apelante.

No. 4475—*Sometido:* Diciembre 13, 1928. *Resuelto:* Julio 23, 1929.

*M. Acosta Velarde,* abogado de la apelante; *M. Tous Soto,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

En este caso, la demanda presentada por Teófilo Marxuach Plumey contra Carolina Amelia Acosta, ante la Corte de Distrito de San Juan, contenía las alegaciones esenciales que vamos a reseñar: que el demandante y la demandada habían contraído matrimonio en 24 de febrero de 1906, y, por virtud de sentencia de la Corte de Distrito de San Juan, de fecha

27 de diciembre de 1923, habían quedado divorciados; que el demandante, en 27 de diciembre de 1923 era dueño, con carácter privativo, de las fincas y bienes que describe, y que, en extracto y resumen, son: (a) un condominio de $7,000 en el total valor de $9,000 de la casa No. 42 de la calle de la Cruz, en San Juan, P. R.; (b) una casa de mampostería y azotea, con el número trece y medio de la calle del General Contreras, antes del Sol, en San Juan, P. R.; (c) otra casa de mampostería y azotea, de dos plantas, con el número 127 de la calle del General Contreras, antes del Sol, en San Juan, P. R.; (d) otra casa, de piedra y azotea, con solar, y con el número 139 de la calle del General Contreras, antes del Sol, en San Juan, P. R. Alegó como una segunda causa de acción: que la sociedad de gananciales que tuvo con la demandada, era en 27 de diciembre de 1923 dueña de las siguientes fincas: (a) solar y casa terrera de madera en el Condado, Barrio de Santurce, término de San Juan de Puerto Rico; (b) solar y casa de dos plantas, de concreto, en el mismo barrio de Santurce: que ambas fincas devengan renta, que señaló. Como tercera causa de acción alegó: que la sociedad de gananciales que tuvo con la demandada, para adquirir las fincas casa en la calle de Wilson, y solar en la calle de España, y construir la casa en este último, contrató préstamo con el Banco Territorial y Agrícola de Puerto Rico, por $5,800, con el mismo un pagaré por $1,900, debiendo asimismo al Banco Popular $1,000 y a Merino Rodríguez & Hermanos $850: que asimismo se adeudan al American Colonial Bank of Porto Rico $3,000, y al Sr. José Montilla $6,187, como consecuencia de ciertas obras hechas por el demandante en sociedad con aquel señor. Como cuarta causa de acción alegó que la sociedad de gananciales a que se refiere se halla sin liquidar, y sin que se logre acuerdo para la liquidación: que por orden de la corte viene pasando a la demandada $300 mensuales. Y pidió que se declarara su propiedad privativa sobre las fincas que como de tal clase señala y sus rentas desde 27 de

diciembre de 1923; que se declararan el activo y el pasivo de la dicha sociedad de gananciales, conforme a los bienes y deudas que alegó: que se proceda a la liquidación de dicha sociedad nombrándose un contador partidor para ese fin; y que se impongan las costas a la demandada, si se opusiera a la demanda.

La demandada en su contestación, y en lo que afecta a lo esencial de las causas de acción, negó que el demandante sea dueño, con carácter privativo, de las fincas que en la demanda señala o describe, y negó la valoración que a las mismas se asigna en la demanda, como la que se da a las descritas en la segunda causa de acción, y que la sociedad de gananciales no tenga otros bienes que los allí enumerados; negó que los préstamos a que el demandante se refiere, fueran contraídos para comprar las fincas de que hace mérito, y que la sociedad de gananciales tenga las deudas alegadas; y asimismo que el demandante haya cumplido con la orden de la corte en cuanto a entregar a la demandada $300 mensuales. Y en contrademanda presentó las alegaciones en cuanto a matrimonio y divorcio entre demandada y demandante; y alegó que durante el matrimonio se adquirieron, además de los bienes que en la demanda se mencionan, una finca urbana, solar y casa terrera, de piedra con azotea, con el número 139 de la calle del General Contreras, antes del Sol, en San Juan de Puerto Rico; una suma de $4,000 como precio de venta de una casa a Doña Josefina Plumey, siendo la casa la del número 139 de la calle del General Contreras, antes del Sol, en San Juan de Puerto Rico; un automóvil marca Columbia Six; una máquina para hormigón; un préstamo hipotecario por $800; un solar y casa en Minillas, Santurce; otros dos créditos hipotecarios por $500 cada uno; otra casa en la calle de McKinley, en el Condado, Santurce; y un depósito en un Banco por $2,000; sin que hubiera deuda alguna; que esos bienes se encuentran en indivisión, sin que las partes se hayan podido poner de acuerdo para la parti-

ción de los mismos. Y pidió la liquidación de la sociedad, y la adjudicación y pago de participaciones.

A la contra-demanda contestó el demandante y contra-demandado, negando el valor del automóvil y fijando uno inferior; y alegando que quedó en poder del contra-demandado como compensación al valor de los muebles que quedaron en poder de la contra-demandante; alegando que la casa en la Calle del General Contreras número 139 era privativa del contra-demandado, que la compró a Doña Josefina Plumey, y negando que existe en su poder cantidad alguna procedente de la venta; alegando que la máquina para hormigón era de la sociedad civil del contra-demandado con el Sr. Montilla, y a éste se adjudicó a la disolución de la sociedad; que el crédito hipotecario por $800 fué cobrado judicialmente, adjudicándose al acreedor la casa, que fué vendida por la sociedad de gananciales, como asimismo fué vendido el solar de la calle de McKinley; que el otro crédito hipotecario fué cobrado por la sociedad de gananciales; y asimismo cree que lo fué el tercer crédito hipotecario que se cita; negando que al disolverse la sociedad poseyese ésta suma alguna en Banco, salvo la que fué entregada a la contra-demandante; y alegando la existencia de deudas de la sociedad, esencialmente las que ya aparecían alegadas en la demanda.

Fué el caso a juicio; y la corte dictó sentencia, por la que se declaran con lugar las peticiones de la demanda, y se ordena la liquidación de la sociedad de gananciales, nombrándose a ese fin un contador-partidor.

Contra esta sentencia se interpuso la presente apelación por la demandada y contra-demandante.

Solamente la apelante ha presentado alegato. En él se señalan siete errores. El primero es así:

"1. La Corte cometió manifiesto error, y abusó de su discreción al permitir al apelado, con la objeción y excepción de la apelante que presentase como prueba de *rebuttal* evidencia que no tenía el carácter, ni naturaleza de *rebuttal,* y que era inadmisible de conformidad con las alegaciones.".

Discútese este señalamiento de error en unión de los numerados 2 ỳ 3, cuyo texto es:

"2. La Corte cometió manifiesto error y abusó de su discreción al permitir al apelado con la objeción y excepción de la apelante que presentara prueba testifical para desvirtuar y contradecir el contenido de escrituras públicas.

"3. La Corte cometió manifiesto error y abusó de su discreción al permitir al apelado con la objeción y excepción de la apelante que presentara prueba testifical contradiciendo el contenido de escrituras públicas contra las alegaciones de la demanda."

De las alegaciones aparece que la contienda quedó establecida en estos términos:

(a) El demandante alegó ser dueño con carácter privativo de las fincas que en la demanda describe, o sea: condominio por $7,000 en el valor de $9,000 de la casa calle de la Cruz número 42; la casa número 13½ de la calle del Sol, hoy del General Contreras; la casa número 127 de la misma calle; la casa número 139 de la misma calle.

(b) La demandada negó que el demandante fuera dueño con carácter privativo de esos bienes.

Ambas partes se refieren a la fecha de la disolución del matrimonio, 27 de diciembre de 1923.

El demandante presentó como prueba:

1. Escritura de fecha 27 de febrero de 1908, por la que los padres del demandante dieron a éste y otros, en anticipo de herencia, la casa de dos plantas, número 4 de la calle del Cristo, en San Juan. Página 104 y 105, exposición del caso.

2. Una escritura de partición de bienes de Don José M. Marxuach (páginas 106, 107 y 108 de la exposición) de la que aparece una adjudicación, en $4,500 de la mitad proindiviso en la casa número 42 de la calle de la Cruz, en San Juan, a favor de Teófilo Marxuach Plumey; y asimismo la adjudicación por $900 en la casa terrera de mampostería, número 13 de la calle del Sol, en San Juan, a favor del mismo.

3. Escritura fecha 25 de octubre de 1922, de partición de

herencia de Doña Josefina Plumey, en la que se adjudica a Don Teófilo Marxuach Plumey, entre otros bienes, la casa número 139 de la calle del General Contreras, antes del Sol, en San Juan. (Pág. 109, exposición.)

Ofreció otra escritura de permuta entre Don Teófilo y Doña Teresa Marxuach, sobre un condominio de la casa calle del Cristo número 4.

Se ha aceptado por la apelante que así el demandante probó que antes de 1914 era dueño a título de herencia de la mitad de la casa número 4 calle del Cristo, de un condominio por $4,500 en la número 42 de la calle de la Cruz, de la número 13 de la calle del Sol, y de la número 139 de la misma calle. En esto hay un pequeño error, ya que el título de adquisición de la número 139 de la calle del Sol, o General Contreras, es la escritura de partición de 25 de octubre de 1922.

La demandada presentó como prueba:

(a) Una escritura de fecha 19 de julio de 1926, por la que Teófilo Marxuach, casado con Carolina Amelia Acosta compra a Teresa Marxuach y su esposo Rafael Villavicencio, la casa, antes terrera, luego de altos y bajos, número 127 de la calle del General Contreras, antes del Sol, en San Juan, apareciendo la finca sujeta a una hipoteca por $5,000 a favor de Alejandro Suárez Villamil, y a un censo por $355.55 y tres censos más. El precio en que se vende es de $8,000, confesando los vendedores haber recibido $3,000, y en cuanto a los $5,000 restantes se dejan en poder del comprador para el pago de la hipoteca (Páginas 112 y 113, exposición).

(b) Una escritura de fecha 19 de agosto de 1916, por la que Acisclo Marxuach Plumey vende a Teófilo Marxuach Plumey, casado con Carolina Amelia Acosta, por precio de $7,662, lo siguiente: (a) Un condominio de la mitad proindivisa y por $2,000 en un valor de $9,000 en la casa número 42 de la calle de la Cruz, en San Juan, hallándose afectado a una hipoteca por $1,500 a favor de Doña Juanita López

de Abad; (*b*) Una tercera parte de la casa número 13 de la calle del General Contreras, en San Juan; (*c*) Un solar en Minillas, barrio de Santurce, San Juan. El vendedor confiesa recibidos $6,162, y los $1,500 restantes quedan en poder del comprador para el pago de la hipoteca (Páginas 114 y 115, exposición).

El demandante al terminar su prueba la demandada, propuso como contra-prueba, o *rebuttal,* los autos del pleito 3061, seguido por Teófilo Marxuach contra Carolina Amelia Acosta, Acisclo Marxuach y Teresa Marxuach, sobre inexistencia de actos y contratos, y reconocimiento de propiedad privativa de bienes; a cuya proposición se opuso la demandada, argumentando que en ese pleito quiso el demandante anular ciertas escrituras otorgadas por él mismo, aduciendo que eran simulados los contratos, y en este pleito se trata de que se declaren privativos ciertos bienes, y no hay que traer más prueba que la documental que acredite ese extremo, sin involucrar la secundaria. La corte admitió la prueba al efecto de que se entabló un pleito atacándose unas escrituras, y que hubo una decisión de la corte, que está en apelación. (Pág. 90, exposición.)

El demandante vino de nuevo a declarar, a su propia petición; y preguntado si vendió alguna propiedad a Acisclo Marxuach, la demandada se opuso, fundándose en que en *rebuttal* no cabía hacer esta prueba, ya que pudo traerse esto a la prueba directa, en el caso de que fuese admisible. La corte, entendiendo que en este caso se pretende aclarar si unos bienes pertenecen, o no, a la sociedad de gananciales, admitió la prueba, con la condición de que si resultare que lo que se intentaba era variar un documento público, la corte lo tendría en cuenta, dándole el peso que tenga. Y la demandada tomó excepción.

El testigo siguió declarando que el dinero con que compró las fincas de Acisclo Marxuach lo tomó de él mismo; y en cuanto a la finca de Teresa Marxuach, la operación fué

un cambio de propiedades, sin que mediara dinero efectivo, pero se hizo constar como venta; que la participación que él tenía en la casa Cristo 4, se la dió a Teresa Marxuach en cambio de la que ella tenía en la del Sol 127; que Aciscio Marxuach no le dió ningún dinero, y que la finca que le vendió eran las mismas que él le vendiera antes. A repreguntas de la demandada, dijo: que en la casa Cristo 4 hizo el testigo reparaciones, siendo ya casado, y la reconstruyó en la forma en que hoy está; eso fué en 1911; y la mitad de esa casa es la que permutó; que en la casa Cruz 43, tenía una participación por $2,000 un hijo de su hermano, y el testigo la compró y tuvo que reparar la casa y tomar $2,000 prestados, gravando la casa; que hubo que componer la pared posterior y el balcón, y hacer varias habitaciones (ducha, etc.) teniendo ahora dos habitaciones y un cuarto de baño más que las que tenía antes; eso se hizo durante el matrimonio. Lo relacionado aparece de las páginas 90 a 94, exposición.

■ No estamos de acuerdo con el sistema de admitir ciertas pruebas, reservándose la corte el tenerlas por finalmente admitidas, según las circunstancias. Cuando se presenta una objeción a la admisibilidad de una prueba, la parte que la formula tiene el derecho a que se resuelva por el juez de una manera inequívoca y terminante. De esa resolución final nace la norma que ha de seguir el que objeta, en cuanto a su presentación de evidencia. Pero si la resolución queda pendiente, y la parte no sabe si en definitiva aquella prueba ha de admitirse o no, es casi imposible para ella gobernar sensatamente su evidencia. A toda prueba *admisible* ha de darse el valor que ella tenga; y ninguno a la no admisible. Pero las partes necesitan saber si se admite o no, de una manera fija y segura.

■ El demandante en este caso presentó sus escrituras de adquisición; la demandada, otras para contradecir el carácter privativo de la propiedad. Y entonces el deman-

dante presentó prueba testifical, en contra de las escrituras presentadas por la demandada, de las que aparecían contratos de compraventa en que el demandante aparece como comprador, y otros como vendedor; apareciendo en esas escrituras que el demandante era casado con Doña Carolina Amelia Acosta.

La apelante discute la aplicación del artículo 149 del Código de Enjuiciamiento Civil de Puerto Rico, en cuanto da arbitrio a la corte para regular el orden de la prueba. No es éste un punto que necesite gran consideración. La facultad de la corte en esta materia es dada, no para ser arbitrariamente ejercida, sino para ser empleada con una discreción jurídica. Sólo cuando se tiene una gran fe en los tribunales, se les pueden dar facultades como ésta; pero precisamente se dan fiando en que sólo serán utilizadas cuando la más justificable necesidad exija desviarse de la regla rígida cuya aplicación estricta obstaculizaría el conocimiento de la verdad y la consecución de la justicia.

La regla es que la parte que inicia el caso agote su prueba primero. Y así, la proposición contenida en la demanda debe ser probada antes de que la parte demandada empiece la presentación de su evidencia.

Pero de más interés es la argumentación acerca de la aplicación de los artículos 25 y 101 de la Ley de Evidencia.

El artículo 25 de la Ley de Evidencia es así:

"Cuando las condiciones de un convenio se hayan considerado por las partes en un documento, se considerará que contiene éste todas dichas condiciones, por lo que no cabrá entre las partes y sus representantes o sucesores en interés, evidencia alguna de las condiciones del convenio, fuera de lo contenido en el documento, excepto en los siguientes casos:

"1. Cuando una equivocación o imperfección en el documento fuere alegada en el litigio.

"2. Cuando la validez del convenio constituyere el hecho controvertido.

"Pero este artículo no excluye otra evidencia de circunstancias

bajo las cuales fuere hecho el convenio, o con las cuales se relacionare, según lo definido en el artículo veinte y ocho, o para explicar una ambigüedad extrínseca, o probar ilegalidad o fraude. La palabra 'convenio' incluye escrituras y testamentos, así como contratos entre las partes.''

Y en el artículo 101 de la misma ley se considera como presunción concluyente, entre las partes interesadas en un documento escrito, la verdad de los hechos que en él se relatan; pero la regla no es aplicable a la relación de una compensación, o en otros términos, a la expresión de la causa.

¿Cuál es la situación de las partes ante estos contratos? ¿Se trata de los que en ellos intervinieron con intereses, o adversos o distintos, claramente diferenciados como trasmitente y adquirente, vendedor y comprador? Indudablemente, no. El demandante y la demandada estaban en un lado de aquellos contratos, y no adquiriendo o creando derechos y obligaciones distintas del uno para con el otro. Y los dos artículos que se citan parecen redactados para salvaguardar derechos, y afirmar obligaciones de las diversas partes en el contrato.

¿Qué es lo que se establece por la declaración de Marxuach, admitida por la corte? Que, en realidad, una operación que aparecía como venta, no fué otra cosa que una permuta; en esencia, que la causa no fué la adquisición de un precio y la adquisición de una finca por ese precio, sino el cambio de una propiedad por otra. Y que en la compraventa con Acisclo Marxuach no hubo ni precio, ni medió dinero alguno en ese concepto, sino la devolución del título de una propiedad que el demandante había antes traspasado a Acisclo Marxuach, para evitar ciertas contingencias en determinado pleito.

En la más estricta verdad, sin que la obscurezca la sombra de un tecnicismo, lo que se establecía en la declaración de Marxuach era la existencia de una causa que no fué precisamente la consignada en el documento; las consecuencias de éste no se alteraban, entre las partes que le suscribieron.

En el caso *Cabrera* v. *American Colonial Bank*, 214 U.S.
R. 224, dijo la Corte Suprema de los Estados Unidos lo que
sigue:

"Pero también están los principios del derecho común, que son
absolutamente necesarios si al documento escrito ha de dársele una
sanción distintiva del convenio de las partes. La faz de un instru-
mento no siempre es concluyente respecto de sus fines. En equidad
se admite evidencia extrínseca al efecto de que se tuvo la intención
de que sirviera de garantía una enajenación que era absoluta por
su propia faz."

Y más adelante se dice:

". . . Y este Tribunal ha dicho en el caso Peugh v. Davis, 96
U. S. 332, 356, reiterándolo en Brick v. Brick, 98 U. S. 516: 'Toda
vez que la equidad en que se funda la corte para actuar en tales
casos surge de la verdadera naturaleza de la transacción, cualquiera
evidencia, bien sea escrita u oral, que tienda a demostrarla, es ad-
misible. La regla que excluye la prueba testifical—dijo la corte
más adelante—se refiere al lenguaje usado por las partes, y no pro-
hibe que se investigue su propósito al otorgar y recibir el documento.
Hughes v. Edwards, 9 Wheat. 489; Russell v. Southard, 12 How
139; Babcock v. Wyman, 19 How. 289. En Morgan's Assignees v.
Strum, se puso en vigor la regla de equidad contra un contrato de
compraventa de un barco, a pesar de éste constar inscrito y asegu
rado a nombre de la persona a favor de quien se efectuó el traspaso.
Véase además Livingston v. Story, 11 Pet. 351."

En el caso *Royer* v. *Kelly*, 161 Pac. 1148, la Corte Su-
prema de California sostuvo lo que sigue:

"Pero la regla es que las partes no están sujetas a impedimento
(*estoppel*) por virtud de cláusulas relativas a la causa de un con-
trato. La verdadera causa, o la falta de ella, siempre pueden pro
barse por medio de prueba extrínseca . . ."

Y esta doctrina ha sido seguida en otros casos de Cali-
fornia (*Tidewater Southern Ry. Co.* v. *Harney*, 162 Pac.
664).

A la luz de esa doctrina, no puede admitirse que la corte
inferior erró como señala la apelante.

■ El cuarto señalamiento de error, es como sigue:

"La Corte cometió manifiesto error y abusó de su discreción al negar la solicitud de la apelante de que se la permitiera, en vista de la prueba presentada por el apelado y admitida por la Corte, enmendar su contestación en el sentido de alegar como defensa especial y materia nueva lo alegado en el pleito civil No. 3061."

La concesión de una enmienda a la contestación en las circunstancias que se daban en este caso, fué materia de discreción.

El incidente a que la apelante se refiere ocurrió así:

"El Letrado de la demandada, dice: Presentamos entonces toda la prueba documental que presentó el demandante en el caso No. 3061. Ahora desea la parte demandada que por cuanto la corte ha admitido esa prueba testifical, se le permita a la demandada enmendar su contestación en el sentido de alegar como defensas especiales y materia nueva en este caso, para que quede como una materia nueva que se trajo en el caso 3061, así como todas y cada una de las excepciones y todos los hechos especificados en aquel caso, para conformar la contestación de acuerdo con la prueba.

"Demandante.—Me allano y pido a la Corte que me permita enmendar la demanda en el sentido de alegar lo mismo que se alegó en aquella demanda, como equivocación en la redacción de las escrituras presentadas como evidencia por la parte demandada.

"Demandada.—Ahora yo solicito enmendar la contestación en el sentido de que se tengan por reproducidas las materias nuevas y defensas especiales que se adujeron en el caso 3061, así como las excepciones que se adujeron en dicho caso, para que la Corte al considerar la prueba tenga ante sí también la alegación de esa materia nueva, y que se ha presentado en este caso, porque confesamos que de acuerdo con nuestra opinión no es admisible esa prueba secundaria.

"Demandante.—Nuestra petición es que se permita enmendar la demanda en el sentido de introducir en ella la misma materia que consta en aquel pleito y sobre la cual la parte ha reproducido todas las materias de defensa.

"Juez.—Yo creo que lo mejor es no admitir enmienda ninguna.

"Lcdo. de la demandada.—Tomamos excepción."

Aunque no hay aquí una regla directa del Juez, que no

hizo manifestación alguna en cuanto a la presentación de los autos del pleito No. 3061, hubo el allanamiento del demandante a que se presentaran. Ambas partes pidieron se les permitiera enmendar; y a ambas partes se les negó la petición. Pero en realidad, los autos estaban presentados por ambas partes, y ellos podían ser considerados por el Juez al resolver. Creemos que la denegación de las enmiendas, dadas las circunstancias, no constituyó error perjudicial a los derechos esenciales de la apelante.

Bastan estos fundamentos para resolver.

*Debe confirmarse la sentencia apelada.*