VICTORIO DE LA ROSA, demandante y apelado, *v.* SUCN. DE FRANCISCO L. QUEVEDO GONZÁLEZ compuesta de su VIUDA MAGDALENA ARROYO y sus hijos legítimos RUBÉN, ESTHER, MARÍA y GLORIA QUEVEDO ARROYO, demandados y apelantes.

No. 6527.—*Sometido:* Febrero 21, 1934.   *Resuelto:* Julio 11, 1934.

*José Veray, Jr.,* abogado de los apelantes; *García Méndez & García Méndez,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Victorio de la Rosa demandó a Francisco L. Quevedo en reclamación de novecientos treinta y seis dólares, intereses y costas.   Basó su demanda en los siguientes hechos:

En agosto 10, 1929, el demandado prestó al demandante cinco mil dólares que el demandante se obligó a devolver con sus intereses convenidos en ochocientos cincuenta dólares, en treinta plazos consecutivos de ciento cincuenta dólares comenzando en diciembre de 1929, a cuyo fin el demandante y su esposa cedieron al demandado un número igual de plazos por cánones de arrendamiento que debían percibir de la Central Coloso, Inc. El contrato se hizo constar en escritura pública.

No obstante haber declarado el demandante en la escritura que había recibido cinco mil dólares, es lo cierto que sólo recibió cuatro mil doscientos.

El demandado ha venido percibiendo puntualmente los cánones de arrendamiento cedidos y el demandante ha cumplido con todas las obligaciones del contrato.

De acuerdo con los intereses estipulados para el préstamo de cinco mil dólares, corresponden a los ochocientos no entregados ciento treinta y seis.

El demandante ha requerido al demandado para que le entregue los ochocientos dólares y sus intereses y el demandado se ha negado, motivo por el cual se recurre a la vía judicial.

La demanda se presentó en diciembre 24, 1932. Murió el demandado y sus herederos Magdalena Arroyo, su viuda, y Rubén, Esther, María y Gloria Quevedo y Arroyo, sus hijos, comparecieron por medio de su abogado en marzo 6, 1933, y excepcionaron la demanda alegando que no aducía hechos suficientes para constituir una causa de acción y la contestaron negando generalmente todos y cada uno de sus hechos.

Fué el pleito a juicio, ambas partes introdujeron evidencia y la corte finalmente declaró la demanda con lugar, con costas. No conformes, apelaron los demandados señalando en su alegato la comisión de siete errores que estudiaremos y resolveremos una vez que hayamos expuesto lo ocurrido en el juicio.

Comenzó el demandante ofreciendo en evidencia la escritura creditiva del préstamo que fué otorgada ante el notario

Arturo Reichard. Se admitió sin oposición. Consta de ella el contrato en la forma indicada en la demanda y en cuanto al recibo del dinero prestado dice textualmente:

"Declaran don Victorio y su esposa doña Joaquina que han tomado a préstamo a don Francisco L. Quevedo González la suma de CINCO MIL DOLLARS, que declaran haber recibido en efectivo, antes de este acto . . . ."

Se llamó entonces a declarar a Célida de la Rosa, hija del demandante. Conocía al Sr. Quevedo y conoce al Sr. Reichard. En agosto, 1929, vivía con sus padres en Aguadilla, en la Cuesta, en la quinta de la viuda de Ducós, y allí fué el Sr. Reichard para que sus padres firmaran la escritura de un dinero que le prestara el Sr. Quevedo. El Sr. Reichard leyó la escritura. Se le preguntó entonces:

"Cuando don Arturo leyó esa escritura hizo alguna manifestación su papá?"

Y el abogado del demandado dijo:

"Me opongo, señor Juez, por ser ésta prueba de referencia; me opongo a que la testigo diga las manifestaciones que hiciera una de las partes contratantes, porque la mejor evidencia es la parte misma."

Discutida la cuestión por ambas partes, fué resuelta por la corte como sigue:

"La Corte, vista la demanda y vista la jurisprudencia establecida por el Tribunal Supremo de Puerto Rico en el caso de Rosado versus Rosado, 17 Decisiones de Puerto Rico, página 471, y por la relación que pueda tener en el caso que nos ocupa la del tomo 1 de las Decisiones de Puerto Rico, página 439, y especialmente la del caso de Fernández et al. versus González et al., 16 Decisiones de Puerto Rico, página 651, siendo claro y terminante que puede, según las doctrinas y la jurisprudencia, traerse prueba extrínseca para demostrar la falta de consideración o causa en un contrato, por analogía—alegándose aquí que parte de la consideración no fué recibida—creemos que debe aplicarse la misma regla y la misma teoría establecida por nuestro Tribunal Supremo y por el Tribunal Supremo de España en la sentencia que por nuestra Superioridad se invoca en el caso de Rosado

versus Rosado. La Corte va a aceptar, con la oposición de la parte contraria, el testimonio de la testigo."

El demandado tomó excepción por los siguientes fundamentos:

"Primero, porque las manifestaciones que el demandante hiciera en presencia de la testigo y sobre las cuales va a declarar ella, constituyen prueba de referencia y *self-serving evidence;* además, constituyen una modificación del contrato, no siendo permisible tal prueba oral porque no se alega en la demanda fraude o sorpresa, según ha sido resuelto en el tomo 32 de las Decisiones de Puerto Rico, página 127, en el caso de Freiría & Compañía versus Cortés Hermanos & Compañía; segundo, porque la admisión de tal prueba constituye variar los términos de dicho contrato, 26 Decisiones de Puerto Rico, página 55, Nicorelli versus Ernesto López & Compañía; tercero, porque constituye además una violación a los artículos 25, 28 y 101 de la Ley de Evidencia en vigor en Puerto Rico; y cuarto, porque la admisión de la declaración de la testigo sobre las manifestaciones que hizo el demandante en su presencia constituye una sorpresa en este acto para esta parte, toda vez que en corte abierta se encuentra el demandante en persona y la mejor evidencia sería su declaración en cuanto a ese particular, para que la parte contraria tuviese el derecho a repreguntarle."

Siguió declarando la testigo que su padre había hecho la manifestación de que faltaban por entregar ochocientos dólares, contestando el notario que como su padre y el Sr. Quevedo tenían tan buena amistad podría firmarse la escritura y ellos arreglarían luego la diferencia. Se firmó entonces la escritura. El Sr. Quevedo no estaba presente.

Anunció el abogado de los demandados que se proponía impugnar la declaración de la testigo. Y a su vez el abogado del demandante anunció que iba a ofrecer el testimonio del propio demandante sobre lo que ocurrió en la transacción de que se trata a fin de colocar a la parte demandada en condiciones de repreguntarle a cuyo efecto pedía el consentimiento de dicha parte demandada. Ésta por medio de su abogado negó el consentimiento pedido.

Compareció Antonio Herrera, vecino de Aguadilla. Conoce al demandante y al notario Reichard. Éste fué a casa

de aquél en agosto, 1929, sacó unos papeles y se puso a leerlos a don Victorio. Se suscitó igual cuestión que con la anterior testigo. El juez permitió que continuara declarando y el demandado tomó excepción en igual forma. Dijo que don Victorio manifestó que le faltaba un dinero y no firmaba el papel. Que don Victorio firmó finalmente "porque le dijo don Arturo que firmara el papel ese que tenía allí que después se arreglaría eso del resto de los chavos; eso oí decir yo." El testigo estaba en la casa esperando que don Victorio le pagara un trabajo que le había hecho en el jardín.

El tercer testigo que declaró fué Simón Vélez. Conoció al Sr. Quevedo y conoce al demandante quien lo mandó a buscar para que lo ayudara a hacer una liquidación con el Sr. Quevedo. Se le preguntó: "¿Discutieron don Victorio y don Paco Quevedo el asunto?" Y el demandado se opuso "por no ser admisible en evidencia prueba en cuanto a transacciones entre una persona que haya fallecido y el mismo demandante."

La corte permitió la pregunta y el testigo contestó:

"Pues don Victorio de la Rosa discutía con él y quería que don Paco Quevedo le liquidara una cuenta que tenía pendiente con él; don Victorio quería llevar la cuenta a una liquidación y entonces el señor Quevedo llamó a su hijo para que le hiciera en maquinilla una liquidación ligera y así lo hizo pocos minutos después."

Vino el hijo Rubén e hizo la liquidación en maquinilla, que es la misma que se le muestra y que presentada como prueba fué admitida con la oposición del demandado. Dice:

"Documentos del Banco $2,255.00—(en lápiz: 'ojo'); Efvo. a él 40.00—( en lápiz: 'de caña'); De una vaca devuelta 50.00—(en lápiz: 'O. K.');—Entregádole por Licdo. Reichard 1,855.00—(en lápiz: 'O. K.');—$4,200.00.—Más 800.00 (en lápiz: 'no')—$5,000.00. —Mayo 23 de 1931.—(En lápiz: 2,255 (menos) 1,670 (igual a) 585.)."

Por último declaró como su propio testigo el demandante. Sabe que la Central Coloso pagó los 39 cánones de arrenda-

miento de $150 cada uno. Nunca se le han devuelto los $800 objeto del litigio.

Repreguntado por el abogado de los demandados contestó que comenzó las gestiones para que se le entregara lo que faltaba cinco días después de firmada la escritura, en forma amistosa. Que en 1930 estaba en San Juan, en el presidio. Escribió entonces a Quevedo. Reconoce la carta de julio 10, 1930.

La evidencia aportada por los demandados consistió en la declaración del notario Reichard, abogado y notario de Aguadilla ante quien se otorgó la escritura. Fué a autorizarla a casa del demandante acompañado del Sr. Quevedo y los testigos. Se le preguntó si el demandante hizo la manifestación de que faltaban ochocientos dólares y contestó:

"No, señor; no hubo esas manifestaciones; allí en aquel acto se dejaron en poder mío, para ser entregados a don Victorio de la Rosa con posterioridad y tan pronto como la Central Coloso se hubiera notificado de la cesión hecha y hubiera dado la conformidad al traspaso, la suma de $1,850; de este dinero la misma noche le entregué yo a don Victorio de la Rosa, en mi casa, un *check* de $200.00 bajo mi responsabilidad personal a pesar de que todavía Coloso no había sido notificado de la cesión hecha ni había dado su consentimiento; el día 12 de agosto, o sea dos días después, sin estar todavía ultimado el asunto de Coloso le entregué $655.00 más; el día 14 de agosto don Victorio me indicó que ya estaba arreglado el asunto de Coloso y me pidió el balance o la liquidación en dos *checks:* uno de $200.00 y otro de $700.00 y así lo hice, y los $95.00 restantes del dinero que dejaron en poder mío los esposos De la Rosa-Labadie se los cargué por la notificación y escrituras hechas en San Juan y por la escritura otorgada aquí en el negocio este del señor Quevedo; con eso quedó saldada la cantidad que me había sido entregada, la que fué pasada al señor de la Rosa en los *checks* antes referidos, habiendo él cobrado todos esos *checks,* los cuales le entregué yo a él personalmente contra el Banco Comercial de Puerto Rico; la suma dejada en reserva en mi poder fueron $1,850.00."

No vió allí a la hija del demandante, ni estaba allí el otro testigo que declaró, Antonio Herrera.

En el testimonio de uno de los demandados, Rubén Quevedo, que dijo que conocía a Simón Vélez quien estaba disgustado con él "porque últimamente ha cogido con mandarme papelitos a cogerme dinero prestado y como siempre se lo niego él parece que se ha disgustado conmigo." Reconoció un papelito que le escribió hacía unos días pidiéndole $1.50 que le negó.

Se le mostró la liquidación que Vélez aseguró que había sido hecha por él y no la reconoció como tal. Dijo que su padre no llevaba libros de ninguna especie. Depositaba sus fondos en el banco y en los mismos talonarios llevaba sus cuentas. Pagaba con cheques y a veces en efectivo.

Y por último en los cheques a que se refirió el notario Reichard, en el papel de Vélez y en la carta del demandante al Sr. Quevedo de julio 10, 1930, en la cual no le habla del dinero reclamado en este pleito. Le pregunta sobre sus gestiones y las de sus mutuos amigos y se refiere a una carreta que tenía en venta.

Hecho el resumen de la evidencia aportada y de las cuestiones suscitadas durante el juicio, estamos en mejores condiciones para estudiar y decidir los señalamientos de error, que pueden resumirse así:

Erró la corte, 1, al permitir declarar a la testigo Célida de la Rosa sobre manifestaciones hechas según ella por el demandante al notario; 2, al no decretar la eliminación de dicha declaración; 3, al permitir declarar al testigo Herrera sobre el mismo extremo; 4, al permitir declarar a Simón Vélez sobre transacciones habidas con un difunto; 5, al admitir como prueba el documento que el testigo Vélez dijo que había escrito en maquinilla Rubén Quevedo por orden de su padre fallecido; 6, al condenar a los demandados al pago de las costas; y 7, al actuar con pasión, prejuicio y parcialidad en la admisión y apreciación de la prueba, dictando la sentencia recurrida.

█ Estamos enteramente conformes con la parte apelada en que en un caso como éste, no obstante declararse en la

escritura que se recibió toda la suma prestada, puede presentarse evidencia de que no fué así.

Desde 1911 esta Corte Suprema, por medio de su Juez Asociado Sr. MacLeary, en el caso de *Rosado* v. *Rosado*, 17 D.P.R. 471, 477, dijo:

"En tercer lugar, ¿cometió error la corte inferior al permitir que el demandante negara haber recibido el precio de la venta, especificado en la escritura, hecho que fué admitido a presencia del notario otorgante de la escritura y a pesar de la advertencia hecha en ella de que: 'confesado el recibo del precio de la venta, no cabe excepción contra la certeza de dicha confesión, aun cuando luego resulte incierta la entrega en todo o en parte'?

"La doctrina de *estoppel* (admisión innegable) no puede ser invocada en este caso. Existe un *estoppel*, (admisión innegable) cuando una parte manifiesta que un hecho existe y la otra parte actúa de acuerdo con tal manifestación en perjuicio propio, no permitiéndose entonces al primero que niegue la alegación que primeramente hiciera. Eso no sucede en el presente caso. Si el comprador no pagó dinero alguno al vendedor, éste sabía lo que pasaba y ningún acto de ella estuvo fundado en tal manifestación. No hay *estoppel*. Se dice en nuestro Código Civil (Art. 1242) que los contratos sin causa no producen efecto alguno; y que la expresión de una causa falsa en un contrato (Art. 1243) da lugar a la nulidad del mismo. Y el artículo 1244 del Código Civil permite que se presente prueba contradictoria a la existencia de una causa que pueda sostener un contrato. Y se declara además en el artículo 1245 del Código Civil que:

"'Los contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez.'

"Por consiguiente, se ve claramente que está permitida la investigación con respecto a las condiciones esenciales de un contrato una de las cuales es la existencia de una causa suficiente. En verdad que sería extraño que la ley considerara un contrato como nulo por expresarse en el mismo una causa falsa y no permitiera prueba referente a su falsedad. La ley civil, según se encuentra en nuestro código, no difiere esencialmente en este punto de la ley común que siempre ha permitido que se muestre en el juicio la falta de una causa suficiente, aunque en la escritura se haya expresado una causa.

"Por lo tanto, la corte inferior no cometió error al permitir que el demandante negara que pasara dinero alguno entre las partes y que fuera sostenida esta negativa, mediante prueba."

Y como se expresa en 10 R.C.L. 1042:

"Con referencia a todos aquellos documentos que acusan recibo de una causa (consideration) hoy en día ya ha quedado bien establecido que se puede demostrar mediante prueba oral que en realidad no se pagó o recibió causa alguna, o que la causa fué mayor o menor o distinta a la expresada. Esto puede hacerse para todos los fines excepto para impugnar o destruir el documento. El importe de la causa o su clase no es considerado como parte esencial del contrato y está sujeto a ser contradicho o explicado, al igual que en cualquier recibo corriente."

Este mismo caso demuestra lo sabio de la regla. Prescindiendo de lo declarado por los testigos de la parte demandante y limitándonos al testimonio del notario ante quien se otorgó la escritura llamado a declarar por los propios demandados encontramos que no es cierto que la totalidad del dinero prestado se recibiera con anterioridad al otorgamiento como en la escritura se consigna. El notario reservó en su poder $1,850 que fué entregando luego al demandante en varias partidas.

Si la variación de los términos del contrato en tal extremo fuera la única objeción, decidiríamos, pues, que no hubo error por parte de la corte de distrito al admitir los testimonios.

Pero existió una objeción más fuerte. Al solicitar el consentimiento de la parte demandada para que declarara el demandante, su abogado se expresó textualmente como sigue:

"Anunciamos, señor Juez, que ofrecemos como prueba ahora el testimonio del demandante don Victorio de la Rosa, a fin de colocar a la parte demandada en condiciones de poder repreguntarle en relación con todo lo que ocurrió en la transacción de que se trata, conscientes como somos de que no podemos utilizarlo como testigo nuestro a menos que la parte contraria dé su consentimiento para ello; y ahora pedimos el consentimiento de la parte contraria para que declare el testigo, porque de otro modo Su Señoría no tiene más remedio que rechazar ese testimonio de acuerdo con la teoría establecida en

el caso de Wilcox versus Axtmayer et al., tomo 23 de las Decisiones de Puerto Rico, página 343.''

En el caso citado se sostiene que está aún en vigor la sección 3 de la Ley para prescribir quiénes son testigos hábiles, aprobada en 1904, que dice:

''En las demandas por o en contra de los albaceas testamentarios, administradores o tutores en las cuales pueda dictarse sentencia a favor o en contra de ellos como tales, ninguna de las partes podrá declarar contra la otra en lo referente a transacciones con, o relaciones hechas por el testador, intestado o pupilo, a menos que fuere llamado a declarar por la parte contraria; y las prescripciones de esta sección se aplicarán a todas las demandas por o en contra de los herederos y representantes legales de un finado, que se suscitaren de transacciones habidas con éste.''

Y si se reconoce por el propio demandante apelado que él personalmente no pudo declarar sobre el extremo indicado, claro es que no puede hacerlo tampoco por medio de otros testigos que refieran sus manifestaciones.

Como se dice en 22 C. J. 217, ''Prueba de referencia no se convierte en admisible debido al hecho de que el declarante ha salido del estado o país o se halla enfermo o no puede ser examinado y se ve obligado a declarar o no le es permitido declarar como testigo.''

Existen, pues, los errores 1, 2, 3 y 4. También el 5, porque sin la declaración de Vélez nada vale la nota en maquinilla atribuída por él al Sr. Quevedo, fallecido, y a su hijo Rubén.

Y de igual modo existen el 6 y el 7, porque sin los testimonios de la Srta. de la Rosa y de Herrera y Vélez no hay prueba que sostenga la demanda declarada con lugar por la corte sentenciadora. Sólo parece justo agregar en cuanto al 7 que no creemos que el juez actuara movido por pasión, prejuicio o parcialidad. Al contrario, surge de los autos que actuó guiado por el sentimiento de la justicia y el deseo de averiguar y fijar la exacta verdad de lo ocurrido, y quizá si logró averiguarla y fijarla en su sentencia. Admitió, sin

embargo, testimonios que la ley no autoriza admitir y su sentencia queda sin apoyo y cae. Eso es todo.

*Debe declararse con lugar el recurso, revocarse la sentencia apelada y dictarse otra declarando la demanda sin lugar, sin especial condenación de costas.*