CONCEPCIÓN ROSALY VDA. DE COLÓN, demandante y apelante, *v.* SUN LIFE ASSURANCE COMPANY OF CANADA, demandada y apelada.

No. 6490.—*Sometido:* Julio 2, 1934. *Resuelto:* Julio 26, 1934.

*F. Zapater* y *R. Cintrón Lastra,* abogados de la apelante; *Hartzell, Kelley & Hartzell,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Se solicita la desestimación del recurso interpuesto en este caso por frívolo. La transcripción completa está ante

nos y la moción de la apelada se presentó después de haber radicado su alegato la apelante. Tuvimos también el beneficio de una inteligente discusión oral de las cuestiones envueltas por los distinguidos abogados de ambas partes durante la vista de la moción.

Se alega en la demanda en resumen que el 15 de abril de 1929, Manuel Colón y su esposa, la demandante, celebraron con la Sun Life Assurance Co. of Canada, la demandada, un contrato de póliza de seguro dotal mancomunada sobre la vida de ambos, que contiene la siguiente estipulación redactada, como toda la póliza, en castellano:

". . . Beneficio. Si durante la vigencia de esta póliza se presentan pruebas fehacientes a la compañía de que la muerte de cualquiera de los asegurados se debe, directa e independientemente de toda otra causa, a lesiones corporales recibidas antes de alcanzar la edad de sesenta años, y cuyas lesiones hayan sido causadas solamente por medios externos, violentos y accidentales, dentro de noventa días a contar desde la fecha de sufrir tales lesiones, la Compañía pagará, además de la suma asegurada expresada en la primera página de la póliza, una suma igual a dicha suma asegurada (excluyendo los bonos adicionales) pagadera al mismo tiempo y en la misma forma que dicha suma asegurada.—Excepciones: Este beneficio de doble indemnización por accidente no ampara ni incluye la muerte . . . si es víctima de homicidio. . ."

Se alega además que las primas estipuladas fueron pagadas hasta abril 26, 1933; que en febrero 1, 1933, mientras el asegurado Colón, que no había llegado a los sesenta años de edad caminaba por la ciudad de Ponce, súbitamente, con malicia premeditada, fué acometido por la espalda por Angel Irizarry haciéndole tres disparos que le ocasionaron la muerte pocas horas después, y que la demandada está dispuesta a pagar a la demandante la suma asegurada—tres mil dólares—pero se niega a reconocerle el beneficio de la doble indemnización.

El hecho décimo de la demanda, copiado textualmente, dice:

"Que según la mejor información y creencia de la demandante,

al tiempo de suscribirse el referido contrato de póliza entre don Manuel Colón Figueroa y la compañía de seguros, o sea, The Sun Life Assurance Company of Canada, ésta, por su agente don José Casanova, quien era un agente debidamente autorizado de la referida compañía, manifestó a dicho don Manuel Colón Figueroa, que en caso de ocurrir su fallecimiento debido a un asesinato, que sus beneficiarios tendrían derecho a recibir los beneficios de la cláusula de doble indemnización transcrita en el hecho cuarto de esta demanda, y que forma parte del referido contrato de seguro sobre la vida de dicho don Manuel Colón Figueroa, y su esposa, la aquí demandante, con la compañía demandada; y seguimos alegando que bajo esa creencia dicho don Manuel Colón Figueroa suscribió el contrato tantas veces referido sobre seguro de su vida y la de su esposa, bajo la indicada póliza número 976261.''

Termina la demanda pidiendo que se dicte sentencia por seis mil dólares con costas y honorarios de abogado.

La parte demandada solicitó la eliminación de todo el hecho décimo de la demanda y la corte la decretó. La demandante tomó excepción.

Se archivó la demanda enmendada consiguiente y la demandada presentó contra ella la excepción previa de falta de hechos suficientes para determinar una causa de acción en cuanto a la doble indemnización.

La excepción fué declarada con lugar y no siendo susceptible de enmienda la demanda se procedió a dictar sentencia condenando a la demandada a pagar a la demandante la suma asegurada de tres mil dólares y absolviéndola del pago de la doble indemnización, sin especial condena de costas.

No conforme la demandante, apeló. Mientras se tramitaba el recurso ambas partes convinieron en que se satisfaciera la sentencia en cuanto al pago de los tres mil dólares, quedando subsistente el recurso a los efectos de decidir si procedía o no la doble indemnización.

En su alegato la parte apelante sostiene que la corte erró al decretar la eliminación de que se ha hecho mérito y al

decidir que la demandante no tiene derecho a la doble indemnización.

No existe el error primeramente señalado. Estamos conformes con el apelante en que tiene excepciones la regla contenida en el artículo 25 de la Ley de Evidencia, 387 del Código de Enjuiciamiento Civil. Ed. 1933. La regla dice:

"Cuando las condiciones de un convenio se hayan consignado por las partes en un documento, se considerará que contiene éste todas dichas condiciones, por lo que no cabrá entre las partes y sus representantes o sucesores en interés, evidencia alguna de las condiciones del convenio, fuera de lo contenido en el documento, excepto en los siguientes casos:"

Y la misma ley señala las excepciones que la jurisprudencia se encarga luego de fijar en toda su extensión. Véanse entre otros los casos de *De la Rosa* v. *Sucesión Quevedo*, 47 D.P.R. 175, y *Marxuach* v. *Acosta*, 39 D.P.R. 965.

También estamos conformes con el apelante en que el estado de la jurisprudencia sobre la materia ha sido bien expuesto en la siguiente cita de los Comentarios a la Ley de Evidencia de Jones, a saber:

"Quizá la excepción más importante a la regla general que está en discusión es que en acciones en que hay envueltos pactos escritos, la causa mencionada generalmente está sujeta a explicación. Así, en acciones en cobro de pagarés u otros contratos, frecuentemente se plantea la defensa de que el contrato carecía de causa, o que la causa ha fracasado; y es admisible prueba para sostener tal defensa, siempre que en otros respectos no varíe el efecto legal del contrato. Por ejemplo, cuando la causa mencionada ha fracasado, puede probarse otra; si un contrato de compraventa, de cancelación u otro documento escrito deja de aducir toda la causa, la misma puede probarse; igual ocurre cuando la verdadera causa es mayor o menor que la mencionada; y si la causa aducida aparece en términos ambiguos o si se desprende claramente que no se ha hecho constar toda la causa, la verdadera causa puede ser probada, y hoy en día la regla generalmente adoptada es que la verdadera causa puede ser probada aunque sea distinta de la expresada; por ejemplo, cuando solamente se expresa una causa nominal. El hecho de que la causa *dehors* del documento se funde en una contingencia no impedirá su

admisión, como por ejemplo, cuando una persona celebra un contrato comprometiéndose a pagar a nombre de otra una deuda contraída por ésta con un tercero, aceptando una finca del deudor, que debía venderse y el remanente (de existir) entregarse al deudor y la enajenación demostraba solamente el importe de la deuda como causa, se permitió al deudor que ofreciera prueba respecto a la contingencia. Cuando el documento mismo expresa que existe otra causa, evidencia de ella, desde luego, es igualmente admisible con el objeto de explicar la ambigüedad. Cuando la causa relativa a distintas propiedades es expresada en una suma en globo, prueba oral es admisible para demostrar la división. Así pues, bajo un contrato escrito relativo a la compraventa de un negocio y de las acciones de una corporación por precio alzado, prueba oral es admisible para demostrar que se hizo un pago en efectivo enteramente para el negocio y que la única causa existente para el saldo del precio de la compraventa cubierto con pagarés fueron las acciones de la corporación. El efecto de tal prueba es el mismo que si se hiciera constar separadamente la causa en el contrato, haciéndolo de ese modo un contrato separado de compraventa. Pero si la prueba oral que se ofrece tiende a variar el contrato en sí, en vez de la causa, ella debe ser rechazada. Una parte no puede, con visos de variar la causa, injertar en el convenio mediante prueba oral, nuevas condiciones y pactos.'' Vol. III, págs. 284–288.

Pero con lo que no podemos estar conformes es con que esos principios aplicados a este caso nos lleven a concluir que la resolución de la corte de distrito ordenando la eliminación de que se trata, fuera errónea.

No sólo dicha resolución encuentra apoyo en la regla general contenida en el artículo 25 de la Ley de Evidencia, no estando comprendida claramente la alegación eliminada en ninguna de las excepciones, si que también y especialmente en los artículos 300, 301, 302, 303, y 334 del Código de Comercio, Ed. 1932, en el 1693 y en el 1694 del Código Civil, Ed. 1930, y en el 173 de la Ley sobre Seguros de Puerto Rico, Código de Comercio, Ed. 1932, p. 582, de los cuales nos limitaremos a transcribir el artículo 334 del Código de Comercio y el 173 de la Ley de Seguros que dicen:

''Artículo 334.–Sólo se entenderán comprendidos en el seguro

sobre la vida los riesgos que específica y taxativamente se enumeren en la póliza." Código de Comercio, Ed. 1932, p. 108.

"Artículo 173.—Toda póliza, u otro contrato de seguro, extendidos por una compañía, o persona, que hiciere negocios de seguros en Puerto Rico, deberá contener en español o en inglés, todos y cada uno de los términos del contrato con el asegurado y ninguna condición será válida, a menos que se hubiere hecho constar como queda indicado, en la póliza o contrato de seguro." Ley sobre Seguros de Puerto Rico, Código de Comercio, Ed. 1932, p. 582.

■ Examinemos ahora la segunda y última de las cuestiones envueltas. Sostiene la apelante que su caso no está comprendido en la excepción de "si es víctima de homicidio," porque su esposo murió asesinado y asesinato y homicidio son distintos.

El estudio que hace la apelante en su alegato pone de manifiesto un laborioso e inteligente esfuerzo en apoyo de su tesis, pero no nos convence de que le asista la razón.

Delitos distintos son en verdad en nuestro Código Penal y lo eran en el antiguo el homicidio y el asesinato en cuanto a la gravedad del acto delictivo y su pena, pero en ambos se trata de la muerte violenta de un ser humano ocasionada por otro ser humano, que constituye siempre en puridad de verdad un homicidio, del latín *homicidium*, de *homo*, hombre, y *caedes*, matar.

"Homicidio," dice Escriche en su Diccionario de Legislación y Jurisprudencia, Vol. 3, p. 148, "es el acto de privar a uno de la vida, o la muerte de un hombre hecha por otro; 'matamiento de ome' dice la ley 1ª, tít. 8º, Partida 7ª. Éste es el mayor de los crímenes que pueden cometerse contra un individuo de la sociedad, porque se le despoja de la existencia, que es el primero y el mayor beneficio que ha recibido de la naturaleza. La palabra homicidio se ha formado por contracción de las palabras latinas *hominis caedes*."

Y luego agrega:

"Actualmente según el art. 419 del Código Penal de 1870, el que matare a otro, sin concurrir ninguna de las circunstancias de alevosía, precio o promesa remuneratoria, inundación, incendio o veneno,

premeditación conocida o ensañamiento (en cuyos casos el homicidio se castiga como asesinato: V: *Asesinato*) incurre en la pena de reclusión temporal.''

De suerte que cuando se usa la palabra genérica ''homicidio'' como se usó en la póliza en este caso, se comprende en ella lo mismo el crimen de asesinato que el calificado simplemente de homicidio.

''El 'asesinato' '', dice la Enciclopedia Jurídica Española, tomo 3, p. 658, ''es una especie del género 'homicidio,' caracterizada por los modos de cometerse.''

Y en inglés es lo mismo. Cítanse en la moción buen número de casos que así lo sostienen. Bastará referirnos a uno, *People* v. *Mar Gin Suie,* 11 Cal. App. 42, 103 Pac. 951 958, en el que se resolvió:

''El dar muerte una persona a otro ser humano bajo cualesquiera circunstancias constituye homicidio (*homicide*) conforme un análisis etimológico de la palabra misma demostrará claramente; pero si un homicidio constituye el delito de asesinato o cualquier otro, ello depende necesariamente de las circunstancias en que el mismo fué cometido. Nuestro Código Penal establece expresamente las circunstancias y condiciones que hacen que la muerte de un ser humano constituya el delito de asesinato, y además prescribe las condiciones en que es excusable o justificable.''

Depurados, pues, los señalamientos de error, se encuentra que no tienen base sólida alguna. Son frívolos, *debiendo en tal virtud declararse la moción de la apelada con lugar, desestimándose en su consecuencia el recurso.*