CRÉDITO Y AHORRO POPULAR, demandante y apelado, *v.* BLANCA MARIANI DE MOLINI, y los herederos de ALFONSO BARTOLI, etc., demandados y apelantes.

No. 6394.—*Sometido:* Junio 13, 1934.   *Resuelto:* Noviembre 5, 1935.

*González Fagundo & González, Jr.,* abogados de los apelantes; *F. Zapater,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Antonio Molini Ruiz adeudaba al Crédito y Ahorro Popular la suma de $12,290.92, pagadera en distintos plazos.

Varias personas convinieron en servir de fiadores, y en lo que al banco se refería, en ser responsables solidariamente. El contrato contenía cláusulas según las cuales el deudor perdería todo derecho a utilizar los plazos al no cumplir ciertas condiciones. Según el banco el derecho a utilizar estos plazos en realidad fué perdido y la corte así lo resolvió. Se señala como error el haberse reducido el término concedido por el contrato original. Se ataca la capacidad del demandante para demandar. Se hizo un tercer señalamiento de error que era claramente insuficiente. De igual modo el cuarto señalamiento estaba incompleto.

El artículo 1096 del Código Civil dispone:

"Perderá el deudor todo derecho a utilizar el plazo:

"1. Cuando, después de contraída la obligación, resulte insolvente, salvo que garantice la deuda.

"2. Cuando no otorgue al acreedor las garantías a que estuviese comprometido.

"3. Cuando por actos propios hubiese disminuído aquellas garantías después de establecidas, y cuando por caso fortuito desaparecieran, a menos que sean inmediatamente substituídas por otras nuevas e igualmente seguras."

El primer señalamiento de error lee así:

"Erró la corte al estimar que el deudor y los fiadores habían perdido el derecho a utilizar el plazo convenido para el pago de la deuda."

Al igual que lo hemos dicho en muchos otros casos, dudamos que este señalamiento sea suficientemente específico.

No podemos convenir con los apelantes en que el artículo 1096 se refiere a insolvencia tan sólo para deudas no garantizadas. El contexto del artículo puede fácilmente referirse a deudas parcialmente garantizadas o a aquéllas en que el acreedor, aunque está aparentemente garantizado, se fundó en la solvencia del deudor. Consideraciones similares son aplicables a la indicación de que en el presente caso el acreedor obtuvo aparentemente buenas hipotecas para gran parte de la deuda. Tampoco es la posición afectada por el hecho

de que al ser la deuda pagada por el deudor y por un fiador, el acreedor exoneró de responsabilidad ciertas cosas que originalmente servían de garantía.

Por tanto, al demostrarse la insolvencia del deudor éste perdió todo derecho a utilizar los plazos, y la sentencia debe ser confirmada. Más adelante comentaremos la alegada cuestión de insolvencia.

■ La señora Alfonsa Bartoli convino en asegurar una casa incluída en la hipoteca. No lo hizo así. Esto está cubierto por el inciso 2 del artículo 1096 que lee así:

"Perderá el deudor todo derecho a utilizar el plazo:

"1. .    .    .    .    .    .

"2. Cuando no otorgue al acreedor las garantías a que estuviese comprometido."

Los apelantes nuevamente insisten en que este artículo se refiere a deudas no garantizadas y sostienen que aquí la deuda lo estaba. Hubo, según ya se ha dicho, una promesa clara de asegurar la propiedad. Es cierto que en muchas hipotecas existe la cláusula de que se perderá todo derecho a utilizar los plazos si el deudor deja de asegurar la propiedad, pero el artículo 1096 sustituye un convenio expreso. El hecho de que el deudor convino en responder de daños y perjuicios no, era un caso de *expressio unius*.

■ En lo que se refiere a Blanca Mariani, la otra fiadora, la corte resolvió que el derecho a utilizar los plazos se había perdido por haber dejado de inscribir su título, con el resultado de que la hipoteca no pudiera inscribirse. Resolvemos que el haber dejado de inscribir su participación hizo disminuir la garantía. Por esta omisión la hipoteca era prácticamente inexistente.

■ Como las dos garantías restantes fracasaron, el acreedor tenía derecho a cobrar su deuda sin determinar la insolvencia del deudor. Sin embargo, se desprendía esta condición. Convenimos necesariamente con los apelantes en que el deudor tenía el título de varias propiedades, así como del

remanente (*equities*) en las mismas, pero el hecho de que tuviera bienes no afectaría la cuestión de insolvencia a menos que estas supuestas propiedades fuesen realizables. Según el Código Civil, a diferencia de la ley de quiebras, surge un estado de insolvencia cuando el deudor no está en condiciones de afrontar sus obligaciones corrientes. La corte y el apelado quedaron convencidos de que el pasivo excedía del activo, y los apelantes no nos demuestran lo contrario.

El segundo señalamiento de error es como sigue:

"Erró la corte al estimar que el Crédito y Ahorro Popular tenía capacidad legal para incoar este pleito."

En relación con el mismo el apelado dice:

"1.—Que el Pueblo de Puerto Rico es el único con autoridad para impedir, mediante *quo warranto,* que la demandante use una franquicia de que carece.

"2.—Que los demandados que contrataron con la demandante están impedidos de impugnar su personalidad legal.

"3.—Que no se alega en la demanda ningún negocio de banca efectuado por la actora, ni se trata de hacer efectivo ningún acto o contrato bancario, sino una hipoteca para garantizar una deuda preexistente.

"4.—Que el contrato en cuestión fué otorgado, como se reconoce por las demandadas-apelantes, antes de transcurrir el período de seis meses desde que entró en vigor la ley de Bancos y cuando era indiscutible la personalidad para otorgarlo de la actora. Véase artículo 4, inciso último, Ley de 18 de (septiembre) de 1923 (Sesión extraordinaria, página 83, infra).

"La ley de Bancos no prohibe ni podría prohibir, sin invadir derechos constitucionales de la actora, que ésta haga efectivas obligaciones válidas y exigibles contraídas a su favor con anterioridad a la vigencia de la ley de Bancos, a pretexto de que dicha demandante no puede legalmente funcionar como un banco. La presentación de una demanda, el ejercicio de una acción no es una operación bancaria. Aun llegando al extremo de sostener que la no reincorporación de la institución bancaria produjera ipso facto su disolución (que la ley no lo determina así) la entidad bancaria tendría acción, en liquidación, en período de disolución, para ejercitar acciones en cobro de lo que se le adeude, para hacer efectivas todas las obligaciones a su favor. Lo único que se le prohibiría es efectuar

nuevas operaciones. Pero éste no es el caso. La Sociedad Anónima no queda disuelta, continúa su existencia, su personalidad jurídica, pero queda impedida de realizar nuevas operaciones de naturaleza bancaria, pero no otros negocios, que no sean de banca, aun siendo nuevos. En nuestro caso la operación de que se trata, ni es nueva, ni es de banca. Véase Código de Comercio sobre facultades de las Sociedades Anónimas en liquidación, artículos 238 y 228 que dicen:

" 'Artículo 238.—En las Compañías anónimas en liquidación continuará, durante el período de ésta, observándose las disposiciones de sus estatutos en cuanto a la convocación de sus juntas generales, ordinarias y extraordinarias, para dar cuenta de los progresos de la misma liquidación, y acordar lo que convenga al interés común.

" 'Artículo 228.—Desde el momento en que la Sociedad se declare en liquidación, cesará la representación de los socios administradores para hacer nuevos contratos y obligaciones, quedando limitadas sus facultades, en calidad de liquidadores, a percibir los créditos de la compañía, a extinguir las obligaciones contraídas de antemano, según vayan venciendo, y a realizar las operaciones pendientes.' ' "

El tercer señalamiento reza así:

"Erró la corte al admitir en evidencia los *exhibits* del demandante marcados con los números 1, 2, 3, 4, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 20, 21, 22 y 26."

Este señalamiento es claramente insuficiente y no necesita ser discutido.

El cuarto señalamiento lee:

"Erró la corte al permitir al abogado del Crédito y Ahorro Popular hacer al testigo Antonio Molini Ruiz preguntas tendentes a aclarar las certificaciones del Tesorero de Puerto Rico presentadas como *exhibits* y también la escritura número 97 de constitución de hipoteca."

El apelado dice:

"Los fines que persigue el art. 25 de la Ley de Evidencia en relación con el 101 de la misma es salvaguardar los derechos de las partes contratantes, según fué resuelto por esta Hon. Corte Suprema en el caso de Marxuach v. Acosta 39 D.P.R. 973. El fin que persigue la citada disposición legal, es evitar que en un contrato escrito celebrado debidamente, la presunción es que ese contrato contiene todas las condiciones del mismo y que no puede traerse evidencia

alguna de las condiciones del convenio fuera de lo contenido en el mismo.

''La objeción hecha por la parte contraria a la pregunta hecha al testigo, fué inmaterial e impertinente toda vez que dicha pregunta tendía a identificar una finca relacionada en la certificación o documento que se le mostró.''

Convenimos con el apelado en la discusión de los señalamientos segundo y cuarto, y *la sentencia apelada debe ser confirmada.*

El Juez Asociado Señor Hutchison está conforme con el resultado.