RAFAEL TORRECH RÍOS, demandante y recurrido, *v.* JUAN RAMÓN RAMOS RODRÍGUEZ, LUIS RAMOS RODRÍGUEZ y la sociedad civil "RAMOS HERMANOS", demandados y recurrente la última. ([1])

*Número:* 11782   *Resuelto:* 21 de diciembre de 1961.

Opinión disidente del Juez Asociado Sr. Serrano Geyls.

Torrech Ríos demandó a los hermanos Ramos Rodríguez y a la sociedad apelante alegando que le adeudaban las siguientes cantidades relacionadas con una finca que Torrech comprara a la sociedad en 24 de marzo de 1953; $1,867.22 de contribuciones territoriales correspondientes al primer y segundo semestre del año contributivo 1952–53, y $1,976.00 de intereses de una deuda hipotecaria para cuyo pago Torrech se reservó la suma de $76,000 en la mencionada transacción. La sociedad negó adeudar suma alguna al demandado y alegó que en la compraventa Torrech se había comprometido a asumir el pago total del préstamo, incluyendo los intereses

---

([1]) La opinión de la mayoría del Tribunal aparece en 83 D.P.R. 174.

y las contribuciones, como parte de la causa o "consideración" de la compraventa.

Llamado el caso a juicio, el demandante ofreció el testimonio de Manuel Pérez Fernández, funcionario del Federal Land Bank of Baltimore, entidad poseedora del crédito hipotecario sobre la finca. Este, en síntesis, declaró que vencido y pagado el primer plazo anual de la deuda el 1 de agosto de 1952 quedó la deuda reducida a $76,000; que el próximo plazo vencería el 1 de agosto de 1953; que hasta el 24 de marzo de 1953, fecha de la compraventa, el préstamo había devengado $1,976 de intereses; que el 20 de noviembre de 1953, Torrech pagó $3,040 por concepto de intereses, los cuales incluían los mencionados $1,976; que los intereses eran pagaderos el 1 de agosto de cada año; que a la fecha en que Torrech compró la finca no se le podía exigir el pago de los intereses; y que para esos días ni Torrech ni su abogado habían ido al banco a inquirir sobre los intereses.

El próximo testigo, Lic. Jorge M. Morales declaró sobre las gestiones de cobro que había hecho cerca de los demandados. El demandante Torrech declaró que en 28 de agosto de 1953 había pagado $1,861.22 de contribuciones territoriales del año fiscal que cubre del 1 de julio de 1952 a 30 de junio de 1953. Declaró, además, que los demandados no le habían satisfecho las cantidades que se refieren a los intereses y a las contribuciones. Los demandantes también ofrecieron la necesaria prueba documental.

Luego los demandados anunciaron su teoría al Tribunal, que era la misma incorporada a la contestación a la demanda, en otras palabras, que el demandante "como parte de la consideración de dicha transacción", se comprometió a asumir y asumió el pago de los intereses devengados y de las contribuciones pendientes. Informaron al tribunal que ofrecerían prueba en ese sentido. Se opuso el demandante aduciendo que tal prueba era contraria al artículo 25 de la Ley de Evidencia. Luego de una extensa discusión del asunto, el tri-

bunal dio permiso a las partes para someter informes, y más tarde resolvió que la prueba ofrecida por los demandados era inadmisible. Manifestó que los términos del contrato eran "claros y explícitos" y añadió: "Es cierto que ni los intereses hipotecarios ni las contribuciones territoriales fueron expresamente mencionadas en el contrato, pero en éste se expresa que la hipoteca estaba reducida a $76,000 cuando en verdad montaba (incluyendo los intereses) a $77,976; y, lo que es más importante, los demandados se obligaron a pagar cualquier otro gravamen que aparte de la hipoteca (en la suma de $76,000) apareciera sobre la finca". Declaró, en consecuencia, con lugar la demanda.

El Tribunal confirma esa sentencia señalando que el propósito de la prueba ofrecida "no era demostrar que la causa era distinta a la estipulada en el contrato", sino "alterar una de las cláusulas del contrato clara y precisa, aquélla que establece 'que si apareciere algún otro gravamen sobre la finca rústica, plantaciones y equipo, que por virtud de este documento le han vendido al compareciente don Rafael Torrech Ríos, aparte de la hipoteca que grava la finca a favor del Federal Land Bank of Baltimore, Porto Rico Branch, [la vendedora] se compromete y obliga por la presente a cancelar el mismo sin costo alguno para el comprador' ". Se añade al final que "Siendo el propósito de la evidencia rechazada por el tribunal alterar una de las cláusulas del contrato escrito, no se cometió el error señalado".

Examinemos, en primer término, la tesis que declara inadmisible la prueba extrínseca cuando su propósito es el de alterar una de las cláusulas del contrato. Estimo que esa es una tesis que no está sostenida por las disposiciones legales nuestras citadas en la opinión del Tribunal, ni por los propósitos de la regla de "parole evidence" incorporada en ellas. Con precisión característica, Wigmore explica el asunto: "Es común hablar de la presente regla como una regla contraria 'a que se varíen los términos de un escrito.' Sin duda

ese es precisamente el resultado de aplicar la regla. Pero nunca puede servir como un índice para determinar en primera instancia si la regla es aplicable. La aplicación y el efecto de la regla son cosas distintas. Emplear esa frase como un índice es razonar en un círculo; porque es una tentativa de decidir si algo, que se acepta es diferente del escrito, debe ser excluido, demostrando que *es* diferente. Todas las frases sobre transacciones que 'varían' o 'contradicen' o son 'incompatibles' envuelven la misma futilidad. La cuestión fundamental gira sobre la intención de las partes de restringir el escrito a elementos o materias específicos de negociación . . .; y si esa intención existió, entonces las otras materias de negociación pueden probarse, aun cuando sean (como usualmente son) diferentes del escrito". (9 *On Evidence*, 3a. ed., Sec. 2431, pág. 102.) Es innecesario añadir nada más a esa explicación.

También se rechaza la prueba ofrecida porque no iba dirigida "a demostrar cuál fue la verdadera transacción entre las partes y la causa verdadera". Sin embargo, fue ofrecida precisa y expresamente para eso: los demandados interesaban probar que el comprador se había comprometido a pagar como causa o "consideración" para el vendedor, no solo el precio estipulado por escrito, sino los intereses devengados pero no vencidos de la deuda hipotecaria y las contribuciones territoriales de un año que no había vencido. A tal efecto habrían de presentar varios testigos, incluyendo el notario autorizante. Me parece evidente que ese ofrecimiento tiene que considerarse como un esfuerzo dirigido a probar que la verdadera causa no se había estipulado en el escrito, sino que estaba incompleta y había una promesa adicional verbal que era parte de ella. Dice Corbin: "Algunas veces se ha sostenido que es inadmisible probar que la causa (*consideration*) estipulada no estaba completa y que existía una promesa adicional de realizar otro acto. Evidencia como esa, sin embargo, debe siempre recibirse si se ofrece como parte del proceso de de-

mostrar que no se firmó y aceptó el documento como una integración completa de todos los términos del acuerdo. Hay numerosos casos que permiten probar esas promesas adicionales. Deben seguirse en todos los casos en los cuales el tribunal no encuentre, como cuestión de hecho, que existe una integración completa y precisa. La prueba de que no se consintió al escrito como una integración completa puede ser muy débil e improbable para darle crédito; la cuestión es entonces una del peso de la prueba, no una de admisibilidad." 3 *On Contracts*, 1960, págs. 495–500.

Una breve reseña de nuestra jurisprudencia comprueba que hemos aprobado la admisión de prueba extrínseca dirigida a demostrar que la causa de una obligación era diferente de la estipulada en el escrito, ya porque fuese otra completamente distinta o porque fuese mayor o menor. Desde *Horton* v. *Robert*, 11 D.P.R. 176 (1906) hemos mantenido el siguiente principio: "No importa qué motivo o causa es expresado en un contrato escrito, la verdad de sus cláusulas no se presume de una manera conclusiva, sino que pueden ser siempre materia de averiguación ante una corte, y puede por tanto proponerse y recibirse prueba para demostrar cuál fue el verdadero motivo o causa de la obligación que se establezca". (Pág. 183). Se trataba de un contrato de préstamo en el que se figuraba cierta cantidad a interés de 12% (entonces legal) y se permitió al deudor presentar prueba oral para demostrar que la cantidad había sido menor y los intereses más altos.

En *Fernández* v. *González*, 16 D.P.R. 650 (1910) se permitió presentar prueba oral para demostrar que una escritura de compraventa había sido hecha bajo condición verbal de que el comprador donaría la finca a los hijos del vendedor. Se trajo al notario autorizante para prestar testimonio sobre ese extremo. En *Marxuach* v. *Acosta*, 39 D.P.R. 965 (1929) se admitió prueba extrínseca para demostrar que la causa de un contrato de venta no había sido la cantidad especificada

en dicho contrato sino otra propiedad inmueble dada en permuta.

En *Ochoteco* v. *Córdova*, 47 D.P.R. 554 (1934) permitimos prueba extrínseca para demostrar que al usar las palabras "en calidad de préstamo" consignadas en el convenio se quiso decir "en calidad de depósito", cambiándose así radicalmente la naturaleza y causa del convenio. En *Ruiz* v. *Sociedad Agrícola*, 46 D.P.R. 818 (1933) se aceptó prueba extrínseca para demostrar que se habían vendido 100 cuerdas, aun cuando el convenio escrito decía que eran 150. En *Rossy* v. *Tribunal*, 80 D.P.R. 729 (1958) se admitió prueba extrínseca para demostrar que lo verdaderamente trasmitido en el contrato de compraventa eran los terrenos firmes de la finca y no los manglares (aunque la descripción de la finca hecha en la escritura incluía la totalidad de los terrenos) y que parte de esos manglares era para compensar a dos abogados por servicios profesionales. Dijimos lo siguiente: "Además no hay duda de que sería admisible prueba para demostrar que la causa expresada en la escritura . . . o la consignada en el convenio privado. . . no fue la que en verdad indujo a las partes a hacer dichos contratos. *Y la regla que excluye evidencia extrínseca para contradecir o variar los términos de un convenio escrito tampoco impide probar cuál fue la verdadera transacción entre las partes, aunque ésta resulte distinta a la que se hizo constar en un documento público o privado*". (Pág. 749. Enfasis suplido).[1]

Como cuestión de lógica y de derecho no veo diferencia alguna entre esos casos y el presente, en el cual se trata de probar que la causa del contrato no fue sólo la cantidad estipulada en la escritura sino que incluía otras dos prestaciones. Si en los citados casos hubiésemos adoptado la norma de no permitir evidencia extrínseca para variar los términos del

---

[1] Examínense, además, *Cabrera* v. *Colonial Bank*, 214 U.S. 224 (1909); *Villanueva* v. *Suárez*, 41 D.P.R. 40 (1930); *De la Rosa* v. *Sucn. Quevedo*, 47 D.P.R. 175 (1934); *Monge* v. *Rodríguez*, 45 D.P.R. 411 (1933).

contrato, hubiésemos tenido que resolverlos en sentido opuesto porque para eso *precisamente* era la prueba.

La jurisprudencia de los Estados Unidos, como indica Corbin, (²) también ha sancionado en numerosos casos la admisión de evidencia extrínseca para probar la existencia de otras promesas en adición a las estipuladas en el contrato escrito. Así por ejemplo, en *Galvin* v. *Railroad Co.*, 62 N.E. 961 (Mass. 1902) se permitió a un litigante, que había renunciado a una reclamación por daños a cambio de una suma de dinero especificada en el contrato escrito, probar que también se le había prometido un empleo. En *Ayres* v. *Cook*, 43 N.E. 2d 287 (Ohio, 1942) la demandante cedió su interés en un negocio por la suma de $2,500 estipulada en un contrato escrito. Se admitió prueba de una promesa verbal de transferirle ciertas tierras. En *Coyne* v. *Coyne*, 225 N.W. 935 (Wis. 1929) el tribunal admitió evidencia extrínseca para demostrar que la causa (*consideration*) incluida en un contrato de venta por escrito comprendía también propiedad mueble, además de la tierra que en él se describía. Y en *Strakosch* v. *Connecticut Trust and Safe Deposit Co.*, 114 A. 660 (Conn. 1921) las partes ejecutaron un contrato formal de adopción en el cual acordaron asumir la relación de padre e hija en todos los respectos. Se permitió probar que la hija había firmado. el acuerdo en consideración adicional a una promesa verbal del padre de dejarle una parte de su herencia suficiente para producir un ingreso de $2,500 anuales. Tampoco hay diferencias sustanciales entre esa jurisprudencia y el caso de autos que produzcan resultados contradictorios.

Se nos dice, sin embargo, que una cláusula del contrato, "clara y precisa", impide la admisión de la prueba sobre las promesas adicionales. Dice la cláusula:

"SÉPTIMO: Don Juan Ramón Ramos y don Luis Ramos Rodríguez en la representación que ostentan, y sus respectivas

---

(²) *Ob. cit.* págs. 498–500. Este libro contiene la más completa discusión de la regla de *"parole evidence"* que he podido hallar.

esposas, doña María Piñot y doña Rosa Julia Buxó, hacen constar, que si apareciere algún otro gravamen sobre la finca rústica, plantaciones y equipo, que por virtud de este documento, le han vendido al compareciente don Rafael Torrech Ríos, aparte de la hipoteca que grava la finca a favor del Federal Land Bank of Baltimore, Porto Rico Branch, se comprometen y obligan por la presente, a cancelar el mismo sin costo alguno para el comprador."

Se afirma que como los intereses y las contribuciones constituyen gravámenes sobre la finca "surge inmediatamente de acuerdo con los claros términos de la cláusula transcrita, la obligación por parte de la vendedora de pagar estas partidas". Obsérvese que la conclusión en cuanto a que la cláusula es "clara" y a que cubre las dos partidas, constituye un acto de interpretación que se funda exclusivamente en la letra del documento. En otras palabras, se rechaza cualquier otra prueba que pueda iluminar la cuestión, interpretándose que la letra es "clara". Pero la interpretación literal de leyes y contratos es tan deficiente y está tan desacreditada que en verdad causa sorpresa que hoy día se utilice como principal sino único apoyo de una sentencia. Son innecesarias las citas sobre la doctrina general. Basta oír a Wigmore sobre el problema específico:

> "Ocasionalmente se dice que al determinar en primera instancia la intención de las partes de incluir o no en un escrito ciertos asuntos de negociación, *'el escrito es el único criterio'*, i.e. no deben buscarse otros datos de la intención fuera de las cuatro esquinas del documento.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> "Esa propuesta, sin embargo, no puede sostenerse, ni en principio ni en la práctica. En la práctica, no la ponen en vigor sus defensores teóricos. En teoría, lo que ya hemos señalado comprueba su falacia (*ante,* sec. 2430). Como el problema consiste en determinar si las partes intentaron que cierto escrito incluyera determinados asuntos, la relación entre el escrito y esos asuntos y su conducta está necesariamente envuelta; y todas estas materias deben considerarse. Cuando dos partes están jugando aje-

drez, no puede decirse que ese es el juego único y decisivo y no meramente uno de una serie, observando ese juego en particular. Si vemos a un agrimensor marcando una faja de tierra, no podemos decir, considerando únicamente las colindancias de esa faja, que constituye todo el terreno del dueño; si miramos más a lo lejos podríamos encontrar que es solamente una parte de un plano mayor. No podemos determinar si cierta caja de tarjetas representa todo el catálogo de la biblioteca de un hombre mirando solo su contenido, ni por la circunstancia de que están todas en una caja, ni aun por la circunstancia de que están ordenadas alfabéticamente e incluyen títulos de la A a la Z; porque tal vez él tenga también un catálogo separado de libros franceses o alemanes, y tal vez tenga catálogos separados de libros de derecho y libros de literatura general, y posiblemente él haya puesto fuera todas las tarjetas de los libros que ha enviado al encuadernador. Es imposible conceptuar a un escrito como total e intrínsecamente autodeterminativo de la intención de las partes de que sea el único memorial de una o siete o veintisiete materias de negociación." (Op. cit. págs. 102–103.)

Si se analiza la cláusula antes transcrita, el resto del contrato y la prueba aportada por los demandantes, se tropieza con las siguientes consideraciones:

1. En ningún sitio del convenio escrito consta pacto expreso alguno sobre las partidas de intereses y contribuciones.

2. Las partes aceptaron que el gravamen en favor del Federal Land Bank era por la cantidad de $76,000.

3. La obligación del vendedor de pagar las deudas de intereses y contribuciones nace únicamente por interpretación de la mencionada cláusula sétima.

4. Para aceptar que existe esa obligación necesariamente hay que concluir que al decir dicha cláusula que el vendedor cancelará "algún otro gravamen" que apareciere sobre la propiedad "aparte de la hipoteca que grava la finca a favor del Federal Land Bank of Baltimore", la misma incluye los intereses adeudados precisamente por concepto de esa hipoteca

que se saca "aparte", y un gravamen tan especial como son las contribuciones.

5. Para no admitir la prueba oral, hay que concluir que la letra de la cláusula séptima es tan clara que no puede llevar a otra conclusión que la Núm. 4.

6. La situación se agrava cuando consideramos que la prueba del demandante demostró que:

a. al firmarse la escritura en marzo de 1953, el vendedor había ya pagado el plazo anterior vencido de la hipoteca (agosto de 1952) y el próximo habría de vencer en agosto de 1953. No había, pues, al momento de firmarse el convenio, intereses vencidos exigibles algunos.

b) tampoco había vencido el año contributivo 1952–53 a que se refieren las contribuciones. Ese año venció en julio de 1953.

A la luz de todas esas circunstancias, no puedo compartir el criterio de que la cláusula séptima es tan completamente "clara" que sin necesidad de recibir prueba extrínseca pueda decirse que impone al vendedor la obligación de pagar los intereses y las contribuciones a que se refiere este caso, y que, en consecuencia, se prohiba admitir esa prueba para determinar si existió o no una promesa adicional sobre dichos extremos.

Estimo, además, que aun utilizando la primitiva teoría de la interpretación puramente analítica, la situación del demandante no mejora. Es completamente ilógico suponer que en un contrato de la importancia del que consideramos (la suma total era de $250,000) las partes utilizaran las palabras "otro gravamen sobre la finca rústica" para cubrir partidas corrientes de intereses y contribuciones cuya existencia tenía necesariamente que ser conocida por el comprador. Carga demasiado la credulidad aceptar que un negocio de esa importancia se hace sin cotejar esos extremos y sin llegar a un acuerdo expreso sobre ellos. Ciertamente no es esa la práctica ordinaria, aun en transacciones de mucha menor importancia.

Obsérvese también el agudo contraste entre la actitud que asume hoy el Tribunal y la que asumimos recientemente en *Sucn. Ramírez* v. *Tribunal Superior*, 81 D.P.R. 357 (1959). Se trataba de la interpretación de la frase "devengando el préstamo durante su vigencia intereses al nueve por ciento anual pagaderos por mensualidades vencidas", incorporada en un contrato de 1927. Originalmente—80 D.P.R. 148 (1957)—resolvimos que la intención de las partes había sido la de "acordar el pago de intereses únicamente por el tiempo de la duración del convenio". Ese fallo tuvo por base el texto literal de las cláusulas del contrato, la conexión entre la frase "vigencia del préstamo" y otras del contrato, la fijación con carácter esencial de un término o plazo de tres años para el vencimiento del débito, y las normas de interpretación de los contratos contenidas en nuestro Código Civil (81 D.P.R. 359). Más tarde en reconsideración, y advertidos de que la sentencia apelada se había dictado mediante moción de sentencia sumaria, revocamos nuestro fallo anterior y devolvimos el caso al tribunal de instancia para que en el juicio las partes tuvieran la oportunidad de ofrecer prueba sobre "actos anteriores, coetáneos y posteriores al contrato, y también sobre las demás circunstancias relacionadas con el convenio sobre intereses, que en verdad pueden contribuir a la acertada investigación de la intención o voluntad común de los otorgantes." (Pág. 360.) Y luego de una serena reflexión y meditado estudio reconocimos, por voz del Juez Asociado señor Saldaña, que "Sólo pueden ser reputados como términos claros aquéllos que por sí mismos son bastante lúcidos *para ser entendidos en un único sentido, sin dar lugar a dudas, y* sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación." (Pág. 361. Enfasis suplido.)

Me parece obvio que nuestro fallo de hoy se aparta diametralmente de esa doctrina y que mediante la interpretación literal de una cláusula que demostrativamente no es "clara"

ni "precisa", aunque así se le llame por el Tribunal, cerramos el paso a prueba necesaria sobre cuál fue el verdadero acuerdo de las partes. Y creo, y esto es lo que verdaderamente me preocupa, que el Tribunal adopta hoy un criterio excesivamente riguroso en la aplicación de las reglas de evidencia, particularmente de una tan desacreditada como la de "evidencia extrínseca", y se aparta así de la trayectoria liberal que ha seguido en el último medio siglo.

Por las razones señaladas considero que debe revocarse la sentencia apelada, y ordenarse al tribunal de instancia que admita la prueba ofrecida y dicte sentencia de acuerdo con su apreciación de toda la prueba.